# FENNER v. BLAKE.

PATENTS; INTERFERENCE; ORIGINALITY OF INVENTION; BURDEN OF PROOF.

1. In an interference proceeding, the fact that one of the parties has been granted a patent for the invention of the issue will give him no advantage over the other party, where the latter's application was pending when the patent was granted.

2. In an interference involving the invention of an improvement in combined beds and couches, between the general manager and the foreman of the upholstery department of a furniture factory, where it appears that although the manager realized the importance of improving the old style of the combined bed and couch, and may have had the idea of substituting therefor a swinging one, such as the on embodied in the invention of the issue, he failed to prove a conception of the means to accomplish the desired result, while the foreman assembled all of the parts and produced the first construction of the article in the factory, it was *held*, that the manager, upon whom was the burden of proof, as junior applicant, had not overcome the case in favor of the foreman, and that therefore the latter was entitled to an award of priority of invention.

No. 459.  Patent Appeals.  Submitted January 24, 1908.  Decided March 3, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.      *Affirmed.*

The facts are stated in the opinion.

Mr. *Warren D. House* and Mr. *John C. Pennie* for the appellant.

Mr. *W. S. Duvall* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

Charles L. Fenner appeals from the decision of the Commissioner of Patents, in an interference case, awarding priority of invention of a combination of bed and couch to his opponent, John L. Blake.

The issue contained twenty-one counts. Three of these, numbers 1, 7, and 21, were set out in the decision below as sufficient to indicate the scope of the invention. This seems a correct conclusion, and has been acquiesced in by the parties. Those counts are as follows:

"1. In a combined bed and couch, the combination with the bed frame of a laterally-movable support pivoted to the bed-frame, a seat member and a back member pivotally connected together and to said support, and an equalizing member pivoted to the bed-frame and to one of said members."

"7. In a combined bed and couch, the combination with the bed-frame, comprising a base and ends, of two rocker-arms pivoted to said frame, the seat and back members pivoted to each other and to said rocker-arms respectively, and movable from a position in alignment with each other to a position at right angles to each other, releasable locking means for holding said members in the right-angled position, and an arm pivoted to one of said members and to said frame so as to swing said members laterally when they are swung on the rocker-arms."

"21. In a combined bed and couch, the combination with the

bed frame, of a swinging support mounted thereon, the seat and back members pivotally connected with said support and each other, an arm pivoted to the bed frame and to one of said members, and positioned so as to swing the said support when the member to which the arm is pivoted is swung on the support, a staple mounted on one of said members, an arm slidably mounted in said staple and having a notch for engaging the staple, a dog pivoted to the notched arm, and provided with a notch for engaging the staple so as to disengage the arm carrying it from the staple upon proper relative movement of said members."

The invention of the issue is an improvement in bed couches of what is called the Davenport type or style, in which the back of the couch is adapted to be dropped to the plane of the seat, thereby forming a bed. The mechanism for accomplishing this comprises two iron members attached to the seat and back respectively and hinged together, a member pivoted to the pintle of the hinge and also the base of the couch, which is called the suspension bar, and a link pivotally attached to the end and to the back of the couch, called the equalizing bar. The back of the couch is kept in its vertical position by means of a latch, which is automatically disengaged by raising the seat. Upon lowering the back the seat is carried forward by the suspending and equalizing bars to the extent that the seat and back project equal distances beyond the base or box of the couch when transformed into a bed.

Blake's application was filed September 30, 1904. Fenner filed October 3, 1904, and received a patent thereon May 16, 1905. As Blake's application was in the office, Fenner takes no advantage by virtue of his patent, and has the ordinary burden of the junior party in interference.

Fenner was, at the time the invention was made, general manager of the furniture factory of V. K. Sammons in Kansas City, Missouri. Blake was the foreman of the upholstery department of the same factory, and had charge, also, of the assembling of the parts of couches made therein. The invention

was developed and reduced to practice in the factory during the summer of 1903.

The issue between the parties is that of originality. The swinging couch embodying the invention of the issue of the interference was assembled by Blake in his department, and was shortly thereafter sold. Others were thereafter made and sold by Sammons. The Sammons factory had previously manufactured and sold Davenport couches of what was called the "sliding" and "gate end" patterns. These were not satisfactory because, to convert the couch into a bed, it had to be pushed away from the wall, the result of which was the moving and frequent injury of carpets. Besides, they did not work satisfactorily in some other respects. Fenner claims to have conceived the idea of the swinging couch in order to overcome said defects. He claims that he directed the construction of the hinges and bars, and directed their new arrangement, and that the work done by Blake in assembling the parts was under his instructions. Blake claims to have discovered the improvement, without suggestion from Fenner or anyone else, and to have constructed and assembled the parts of the first swinging couch that was made.

The Examiner of Interferences was of the opinion that Fenner had not communicated the invention to Blake, and decided in favor of the latter. The Examiners-in-Chief reversed his decision and awarded the invention to Fenner. On appeal to the Commissioner, who agreed with the Examiner of Interferences, the last decision was reversed.

Owing chiefly to lengthy examinations and cross-examinations of the witnesses produced, the record of the evidence is voluminous. The material portions of this evidence have been reviewed at length, and fairly, in the several decisions of the Patent Office.

We concur in the conclusions of the Examiner of Interferences and the Commissioner, and as the decision of the latter will therefore be affirmed, we think it would serve no important purpose to add anything to their discussion of the testimony

It is sufficient to say that Blake undoubtedly assembled all

the parts, and produced the first construction embodying the invention that was seen in the Sammons factory; and that while Fenner, as well as others, realized the importance of improving upon the sliding Davenport, of former manufacture, and may have had the idea of substituting a swinging one therefor, he has failed to prove a conception of the means to accomplish the desired result,—much less its communication to Blake

Fenner having failed to overcome the case in favor of Blake, the Commissioner was right in awarding the invention to Blake. The decision will therefore be affirmed. The clerk will certify this decision to the Commissioner of Patents as required by law.

*Affirmed.*